UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RAMON QUIROS                              :
                                          :
         v.                               :     C.A. No. 07-044T
                                          :
MICHAEL J. ASTRUE                         :
Commissioner, Social Security             :
Administration                            :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

      This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Social Security Disability Benefits ("SSDI") and Supplemental Security Benefits ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on January 31, 2007 seeking to reverse the decision of the Commissioner. On November 30, 2007, Plaintiff filed a Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 10). On January 28, 2008, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 12). A reply was filed on February 12, 2008. (Document No. 13).

      This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record and the legal memoranda filed by the parties, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that the Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the

Decision of the Commissioner (Document No. 12) be GRANTED and that the Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision be DENIED. (Document No. 10).

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for SSDI on January 21, 2003, alleging disability as of December 23, 2002, (Tr. 113-115), and for SSI on November 3, 2004, alleging disability as of April 29, 2000. (Tr. 729-732). His claims were denied initially (Tr. 82) and on reconsideration. (Tr. 83, 733-736). Plaintiff requested an administrative hearing. (Tr. 92). On March 7, 2005, Administrative Law Judge Barbara F. Gibbs ("ALJ") held a hearing at which Plaintiff, represented by counsel and assisted by an interpreter and a vocational expert ("VE") appeared and testified. (Tr. 39-81). The ALJ issued a decision on June 17, 2005 finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 17-38). The Appeals Council denied Plaintiff's request for review on December 15, 2006 (Tr. 9-12), making the ALJ's decision the final decision of the Commissioner. A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that (1) substantial evidence does not support the ALJ's finding that Plaintiff's sleep apnea and breathing problems are non-severe impairments; (2) the ALJ's analysis of Dr. McCloy's consultative examination report is not supported by substantial evidence; and (3) substantial evidence does not support the ALJ's negative inference regarding the absence of any treating physicians' disability opinions. The Commissioner disputes Plaintiff's claims and argues that there is substantial evidence in the record to support the ALJ's finding that Plaintiff was not disabled during the relevant time period.

## III.  THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

**IV.     THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A.     Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.     The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E. Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4) Treatment, other than medication, for relief of pain;

    (5) Functional restrictions; and

    (6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.  APPLICATION AND ANALYSIS

Plaintiff was forty-four years old on the date of the ALJ's decision. (Tr. 113). Plaintiff has a high school education, but is unable to communicate in English. (Tr. 446). Plaintiff has past relevant work as a warehouse worker/fork lift operator, clerk and shipper. (Tr. 144-151). Plaintiff last worked on December 23, 2002. (Tr. 45).

Plaintiff has "multiple medical problems." (Tr. 603). The administrative record in this case is nearly 800 pages making it impractical to attempt to summarize the medical evidence of record.

The ALJ's decision contains a detailed summary of the medical evidence which is not directly contested by Plaintiff. (Tr. 26-33; Document No. 10 at 5).

The ALJ determined that Plaintiff had the following "severe" impairments: unstable angina, obesity, degenerative changes in the lumbar spine and depression with anxiety. (Tr. 36, Finding 3). The ALJ found that Plaintiff's hypertension, high cholesterol, non-insulin dependent diabetes, GERD, sleep apnea, dry eyes and unspecified shortness of breath were not "severe" impairments within the meaning of 20 C.F.R. § 404.1520(c). (Tr. 26). Plaintiff only challenges the ALJ's non-severity finding as to sleep apnea and shortness of breath.

The ALJ decided this case adverse to Plaintiff at Step 5. She determined that Plaintiff could perform a range of light work limited by an inability to climb and only an occasional ability to perform other postural activities, a need to avoid extreme cold and pulmonary irritants, and a need for unskilled, routine and repetitive work involving things rather than people and requiring no more than occasional interaction with others. (Tr. 37, Findings 5 and 7). Based on testimony from the VE, the ALJ concluded that Plaintiff's RFC allowed him to perform a significant number of jobs in the regional economy. (Tr. 37, Finding 12).

### A.     The ALJ's Non-severity Findings are Supported by Substantial Evidence

Plaintiff first takes issue with the ALJ's evaluation of his sleep apnea. Plaintiff's sleep apnea was initially diagnosed in December 2004. (Tr. 679-680). Dr. Bonstati opined that "first line therapy" was weight loss and a CPAP machine. (Tr. 680). She also noted that upper-airway surgery could be a "potential treatment option." Id. Plaintiff was scheduled for a CPAP trial on March 8, 2005 – the day after the ALJ hearing. (Tr. 685). The trial eventually occurred on May 5, 2005, and

Plaintiff's sleep apnea was reportedly "well controlled" on CPAP and it was noted to be "an effective mode of therapy" for Plaintiff. (Tr. 764-765).

The ALJ concluded that if Plaintiff was compliant with therapy, the sleep apnea would be controlled and not be an impairment causing significant limitations in the performance of work activities for a continuous twelve-month period as required by 20 C.F.R. § 404.1505. (Tr. 30). Plaintiff characterizes this conclusion as a "lay assumption" bereft of medical support. (Document No. 10 at 10). Plaintiff is wrong. As noted, the May 2005 sleep study determined that CPAP therapy would be effective. (Tr. 765). There is no evidence of record to the contrary. In fact, Plaintiff's proposed finding that the CPAP would not be effective and Plaintiff's sleep apnea constitutes a "severe impairment" is the unsupported assumption.

Plaintiff also challenges the ALJ's evaluation of his shortness of breath. The ALJ noted the lack of objective evidence associating Plaintiff's shortness of breath with a lung disorder (Tr. 26) and that chest x-rays in 2003 and 2004 showed no abnormality and no evidence of acute cardiopulmonary disease. (Tr. 29). She also noted that pulmonary function tests in September 2004 showed no abnormalities. Id.

Plaintiff ignores these portions of the ALJ's decision and focuses on a single sentence, i.e., "pulmonary function tests were performed, but they are not part of the record." Id. Plaintiff contends that the ALJ had a duty to obtain these test results and expand this lengthy record. Plaintiff does not, however, explain how these results would have resulted in a disability determination. In fact, a chest x-ray performed on April 14, 2005 was normal and showed "no acute cardiopulmonary disease." (Tr. 793).

Plaintiff has shown no error in the ALJ's evaluation of either his sleep apnea or breathing issues. As noted by the ALJ, Plaintiff's impairments have been something of a "moving target." (Tr. 34). In his 2003 application, Plaintiff alleged inability to work due to high blood pressure and depression. (Tr. 135). By the time Plaintiff appeared for his ALJ hearing in March 2005, the number of alleged disabling impairments had grown substantially. The ALJ thoroughly considered all of the Plaintiff's claimed impairments, and found some to be severe and others non-severe. To her credit, the ALJ issued a detailed decision in a complex case with a nearly 800-page administrative record. The ALJ fully considered Plaintiff's impairments and also the effect of his obesity in assessing Plaintiff's RFC. Plaintiff has shown no error in the ALJ's determination that he can perform a limited range of unskilled, light work.

### B.      The ALJ's Evaluation of Dr. McCloy's Opinion is Not Legally Erroneous

On March 10, 2005 (three days after the ALJ hearing), Plaintiff was evaluated by Dr. Steven McCloy at the request of Plaintiff's counsel. (Ex. 52F). Dr. McCloy examined Plaintiff and reviewed various medical and diagnostic testing records. Based on this, Dr. McCloy opined that Plaintiff's "array of chronic medical problems" makes it "highly improbable" that Plaintiff can hold and sustain a job. (Tr. 725). Dr. McCloy also completed a physical capacity evaluation that effectively limited Plaintiff from performing even sedentary work. (Tr. 728).

Although it was issued after the ALJ hearing, the ALJ discusses Dr. McCloy's evaluation at length in her opinion. (Tr. 30-33). The ALJ concluded that Dr. McCloy's opinion was entitled to "little weight, as it is inconsistent with the weight of the evidence." (Tr. 33). Plaintiff contends that this conclusion is not supported by substantial evidence in several respects.

Dr. McCloy is not a treating physician. He examined Plaintiff and his medical records on a single occasion. The ALJ's physical RFC assessment is supported by the reviewing physicians, (Exs. 8F and 14F), and Plaintiff has not identified any contradictory assessments from treating sources. The ALJ gave several reasons for her decision to discount the weight given to Dr. McCloy's opinion. Thus, the issue on administrative review is not whether the Court would have reached the same conclusion as the ALJ, but rather whether the ALJ's reasons are adequate and supported by the record. A review of the ALJ's decision shows that her reasons for discounting Dr. McCloy's opinion are adequate and supported by the record, and thus her assessment is entitled to deference.

For instance, Dr. McCloy discussed Plaintiff's prior bout of Guillain-Barre syndrome ("GBS") in 2000 and noted that Plaintiff "sufficiently recuperated" to return to work through the end of 2002. (Tr. 722). The ALJ also found that Plaintiff "returned to work with no evidence of residual effects" after treatment for GBS. (Tr. 27). Dr. McCloy diagnosed "status-post" GBS with residual effects. (Tr. 725). The ALJ noted that "Dr. McCloy seems to suggest that [Plaintiff] may have residual effect of GBS." (Tr. 33). In support of his diagnoses, Dr. McCloy cites several general statistics regarding GBS, including recovery and relapse rates. (Tr. 725). However, the medical basis for Dr. McCloy's disability opinion is far from clear. Dr. McCloy notes Plaintiff's reported pain, the statistical possibility of residual pain from GBS and the overall impact of Plaintiff's "unfortunate array of impairments that prevent him from being able to continue with gainful employment." (Tr. 726). The ALJ also accurately notes that Plaintiff has not been diagnosed with a recurrence of GBS, and a July 2004 nerve conduct study to rule out GBS was normal and showed "no electrodiagnostic evidence of polyneuropathy." (Tr. 572-573). Further, the ALJ noted that

Plaintiff's treating physicians "have indicated that [Plaintiff] experiences no residual effects from GBS." (Tr. 33). Plaintiff does not specifically dispute this finding.

Additionally, the ALJ discounted the "extreme" physical limitations opined by Dr. McCloy as unsupported by the record. The ALJ accurately noted that the objective medical evidence did not support Dr. McCloy's opinion. For instance, a 2004 x-ray of Plaintiff's lumbar spine was normal and showed only "minimal degenerative change." (Tr. 544). In addition, a 2004 x-ray to assess reports of hand pain was normal with "no radiographic evidence for acute bony injury." (Tr. 570). The ALJ appropriately evaluated Dr. McCloy's opinion in the context of the entire record and Plaintiff has not shown that her decision to give the opinion "little weight" is reversible error. The ALJ did not totally reject Dr. McCloy's opinion, and her RFC assessment of only a limited range of light work is supported by the record.

### C.     The ALJ's Observation Regarding the Absence of Treating Physician Disability Assessments Does Not Warrant Remand

The ALJ observed that "none of the doctors who have treated [Plaintiff] over the past several years have indicated that he is disabled." (Tr. 33).[1] Plaintiff argues that the ALJ erred in drawing this "negative inference" and that the ALJ should have utilized 20 C.F.R. § 404.1527(c) to obtain opinion evidence from Plaintiff's doctors. Plaintiff further contends that it is "unreasonable" to expect a busy physician to quantify functional effects of impairments unless asked. (Document No. 10 at 14).

Even if Plaintiff is correct, there is no indication that this single, one-sentence observation was dispositive of Plaintiff's case. The ALJ issued a detailed decision which evaluated an

---

[1] The ALJ made this statement in the context of discussing the status of Plaintiff's GBS and noted that it was "more significant" than the fact that Plaintiff's treating doctors had not indicated Plaintiff experiences residual effects from GBS.

administrative record of nearly 800 pages. As noted above, the ALJ appropriately gave little weight to Dr. McCloy's opinion obtained shortly after the ALJ hearing. She also concluded that the opinions of the non-examining consultants (Exs. 8F and 14F) that Plaintiff could perform light work are "not inconsistent with the medical evidence...in the record at the time they [were] rendered and that [were] submitted later" and thus should be given "appropriate weight." (Tr. 32).

Plaintiff contends that the ALJ erred in inferring from the silence of Plaintiff's treating physicians on the issue of disability that they felt he was not disabled. (Document No. 13 at 4). There is no indication that the ALJ drew this inference. As noted above, the ALJ made her statement in the context of discussing the status of Plaintiff's GBS. Further, it is undisputed that the statement is consistent with the record. The ALJ was presented with conflicting evidence as to disability and, in weighing the entirety of the record, it was not error for the ALJ to observe that Plaintiff's treating physicians had not weighed in with a disability assessment.

### VI.   CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED and that Plaintiff's Motion to Reverse Without a Remand for a Rehearing or, Alternatively, with a Remand for a Rehearing of Commissioner's Final Decision (Document No. 10) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 25, 2008